PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MARTIN LOUIS BAUCOM,
*Defendant-Appellant.*

No. 06-4229

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

PATRICK GRANT DAVIS,
*Defendant-Appellant.*

No. 06-4230

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MARTIN LOUIS BAUCOM,
*Defendant-Appellant.*

No. 06-4273

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

MARTIN LOUIS BAUCOM,
*Defendant-Appellee.*

No. 06-4396

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

PATRICK GRANT DAVIS,
*Defendant-Appellee.*

No. 06-4398

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

MARTIN LOUIS BAUCOM,
*Defendant-Appellee.*

No. 06-4418

Appeals from the United States District Court
for the Western District of North Carolina,
at Charlotte and Statesville.
Graham C. Mullen, Senior District Judge.
(5:02-cr-00026-1; 5:02-cr-00026-2; 3:02-cr-00147)

Argued: March 16, 2007

Decided: May 16, 2007

Before WILKINS, Chief Judge, and WILKINSON and
TRAXLER, Circuit Judges.

---

Affirmed in part; vacated and remanded in part by published opinion.
Chief Judge Wilkins wrote the opinion, in which Judge Wilkinson
and Judge Traxler joined.

---

## COUNSEL

**ARGUED:** Thomas Kieran Maher, Chapel Hill, North Carolina, for Martin Louis Baucom and Patrick Grant Davis. David Alan Brown, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for the United States. **ON BRIEF:** Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for the United States.

## OPINION

WILKINS, Chief Judge:

Martin Louis Baucom and Patrick Grant Davis (collectively, "Appellants") appeal their convictions for conspiracy to defraud the United States, *see* 18 U.S.C.A. § 371 (West 2000), and willful failure to file tax returns, *see* 26 U.S.C.A. § 7203 (West 2002). The Government challenges the variance sentences imposed by the district court, contending that the district court improperly calculated the advisory guidelines range and that the sentences imposed were unreasonable. For the reasons set forth below, we affirm Appellants' convictions, vacate their sentences, and remand for resentencing.

I.

Appellants operated Baucom-Davis and Associates, a land surveying and computer consulting business. From 1990 until 2002, Appellants failed to file personal income tax returns. They also failed to file income and employment tax returns for the business.

Appellants were charged in separate indictments on May 7, 2002. On June 3, before his initial appearance, Davis requested a 60-day continuance "to seek competent assistance of counsel to represent [him] on constitutional grounds." J.A. 39. Davis' motion stated that he had "NEVER Waived [his] RIGHT TO COUNSEL" and that he "object[ed] to this court's attempt to force counsel on [him] against [his] will." *Id.* at 41. Magistrate Judge H. Brent McKnight granted Davis' request for additional time.

At his initial appearance on June 17, Baucom also requested additional time to obtain counsel. This request was granted by Magistrate Judge Carl Horn, III. Telephone calls from the office of the clerk on July 2 and 18 indicated that Baucom had not yet obtained counsel. At a hearing on August 12, Baucom informed the court that he had sent nine questionnaires to attorneys in the hope of obtaining counsel but had been unsuccessful. Magistrate Judge Horn granted Baucom an additional four weeks, advising him that he should consider another method of contacting potential attorneys and warning him that he would be required to appear pro se at his arraignment if he did not obtain counsel.

Meanwhile, on July 9, Davis filed another request for a continuance to seek counsel. Davis asserted the right to have a "friend" act as counsel, arguing that the right to "Counsel" guaranteed by the Sixth Amendment, U.S. Const. amend. VI, was not limited to professional attorneys. Davis' 28-page memorandum in support of his motion provided, in part:

> Defendant . . . has little confidence in the legal profession . . . . Defendant is aware of a few attorneys he trusts, but their multi-thousand dollar fees are out of the question . . . . He does NOT trust just any attorney out of a grab-bag whom the government is willing to furnish; neither would this defendant be satisfied with such an "attorney's" concept of the Constitution of the United States after the average attorney, full of law-school brainwashing, thinks that the Constitution is what the judges say it is, rather than what the Constitution itself, says it is.

J.A. 75. At a hearing regarding the motion, Magistrate Judge McKnight offered to appoint counsel for Davis, but Davis declined. The judge granted Davis an additional 60 days.

At a hearing on August 8, Davis informed the judge that he still had not obtained counsel. Davis assured Magistrate Judge McKnight that he did not plan to ask for another extension of time. Despite this pledge, on September 3 Davis filed yet another request for a 60-day continuance to obtain counsel. The motion indicated that Davis had contacted only three attorneys since the previous hearing. Baucom

filed an identical motion on the same day, naming the same three attorneys and providing copies of the same certified mail receipts that Davis had used as proof that he was attempting to obtain counsel.

Magistrate Judge Horn conducted Baucom's arraignment on September 9, at which time Baucom stated that he still did not have counsel. Magistrate Judge Horn justifiably admonished Baucom for continuing to send questionnaires to potential attorneys after having been advised that this was not an effective means of obtaining counsel. The judge then ruled that Baucom had had adequate time to obtain counsel, deemed him to be representing himself for purposes of the arraignment, and asked Baucom whether he pleaded guilty or not guilty. When Baucom refused to enter a plea, Magistrate Judge Horn entered a plea of not guilty on Baucom's behalf.

On October 23, Davis filed a document entitled "AFFIDAVIT & DECLARATION OF CONTINUED EFFORTS TO SEEK COMPETENT COUNSEL." *Id.* at 156. The document contained numerous citations of Washington State cases and procedural rules. Among other things, Davis asserted that "[t]his court has NO authority to appoint me counsel over my objections"; "I can and will sue any Attorney for ineffective assistance of counsel who is appointed to my case over my objections"; and that "I can and will sue the person who picked my attorney and appointed him to me over my objections if said attorney loses my case." *Id.* at 163. The "affidavit" was witnessed by Davis' wife (who also notarized it) and by Baucom.

On November 4, United States District Judge Richard L. Voorhees entered an order denying Davis additional time to seek counsel. Judge Voorhees concluded that Davis "has been given ample time to secure counsel, and his failure to do so is a result of his unjustifiable failure to avail himself of the opportunities fairly given." *Id.* at 183.

At a hearing regarding counsel on November 6, Davis stated,

> I'm of the opinion that this indictment is invalid and I don't think that I should have to plead to an invalid indictment. It fails to state the specific tax that they are alleging I have never paid. . . . [T]he section that is listed on this indictment is a section that specifies the penalty for failing to obey

> some other section, but they did not specify the section that
> I have supposedly failed to comply with.

*Id.* at 191-92. Davis further asserted that even to plead "not guilty" would amount to accepting the validity of the Government's claim that there was a tax that Davis owed. Judge Voorhees rejected this argument, noted that Davis had had adequate time to obtain counsel, and stated that Davis had the option of proceeding pro se with or without standby counsel or having counsel appointed. Responding to Davis' protest, Judge Voorhees observed that Davis "seem[ed] to take an attitude that [he was] not going to do anything affirmatively that might help address the stalemate that now exists in the case and consequently the court has to take its own initiative in the matter." *Id.* at 196. The court therefore appointed counsel.

A superseding indictment was filed on December 3, essentially consolidating the charges against Appellants. Several days later, Davis filed yet another motion seeking an extension of time to seek counsel. He also filed several documents purporting to terminate appointed counsel. At Davis' arraignment on December 12, Magistrate Judge Horn discussed the situation with Davis and with appointed counsel and decided to leave matters as they stood. When Davis refused to enter a plea, Magistrate Judge Horn entered a plea of "not guilty" on Davis' behalf.

Davis filed a fifth request for a continuance on December 30, 2002. Baucom filed an identical request—his third—on the same day. At Baucom's rearraignment, also on December 30, Magistrate Judge Horn warned Baucom that the onus was on him to obtain a lawyer, and if the scheduled trial date arrived and Baucom did not have counsel, he would be required to proceed pro se. Baucom acknowledged this.

Magistrate Judge Horn conducted a status-of-counsel hearing regarding Davis on March 6, 2003. In light of Davis' refusal to cooperate with appointed counsel, Magistrate Judge Horn relieved appointed counsel. The judge then warned Davis that his trial was scheduled for early April and stated, "You do not have a right to delay the trial any further. That will be up to the [district court] whether [it] wants to exercise the discretion and give you more time or not. If you

get to the April term and you haven't found someone to represent you, you will be representing yourself . . . ." *Id.* at 283.

Despite the warnings given to both Appellants, neither had retained counsel by the April term of court. United States District Judge Graham Mullen (hereinafter "the district court") continued the case to the July term of court.

On April 10, the district court filed a document from one Lewis Anthony Ewing, which the court construed as a motion to appear pro hac vice. The motion included a declaration in which Ewing claimed to be "admitted to practice in the Superior Courts of the State of Washington" and five tribal courts in that state, and "a member in good standing" of several bar associations. *Id.* at 302. Ewing's declaration identified "Alan Richey" as co-counsel but provided no information regarding him. *Id.* The motion was referred to Magistrate Judge Horn. In a written order, the judge noted that despite Ewing's purported membership in bar *associations*, the declaration did not indicate whether Ewing had graduated from an accredited law school, whether he had passed a state bar exam, and whether he had been admitted to any state bar. Further, Magistrate Judge Horn's order stated that he had called the telephone number supplied in the declaration to inquire about these matters. "Mr. Ewing's message did not appear to be that of a law office, but the undersigned identified himself and recorded the three points of inquiry on Mr. Ewing's voice mail." *Id.* at 309. This call was not returned. In light of these problems, Magistrate Judge Horn denied the motion.

Appellants' case was called for trial on August 4, 2003. At that time, Appellants still were not represented by counsel, and they requested another continuance. The district court denied the motion, commenting, "It sure looks like you fellows have gamed the system and it's time for it to be over with . . . ." *Id.* at 344. The case then proceeded to trial, and Appellants were convicted.

II.

We first consider Appellants' challenge to their convictions. Appellants maintain that their Sixth Amendment right to counsel was

violated by the refusal of the district court to grant a further continuance to allow them to obtain counsel. We disagree.

The Constitution generally entitles a defendant to representation by counsel of his choice. *See United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2561 (2006). This right may be violated when the district court refuses to continue a trial despite the fact that the defendant does not have counsel, or when defendant's counsel is unprepared to proceed. *See Sampley v. Att'y Gen.*, 786 F.2d 610, 612-13 (4th Cir. 1986). At the same time, however, a defendant cannot delay trial indefinitely "by simply showing up without counsel, or with allegedly unsatisfactory counsel, whenever his case is called for trial." *Id.* at 613. In considering a request for continuance on the basis of absence of counsel, the court must "make a judgment whether [the lack of counsel] results from the lack of a fair opportunity to secure counsel or rather from the defendant's unjustifiable failure to avail himself of an opportunity fairly given." *Id.* This judgment is reviewed for abuse of discretion. *See id.*

The district court clearly did not abuse its discretion here. Nearly 15 months elapsed between Appellants' initial indictments and the date their case was called for trial. The record reveals that this lengthy delay was due entirely to the desire of the magistrate and district court judges to provide Appellants ample opportunity to obtain counsel of their choice. Under the circumstances, Appellants were given a fair opportunity to obtain counsel, and the denial of their motion to continue on the day of trial was not an abuse of discretion.

III.

Having affirmed Appellants' convictions, we now consider the Government's challenges to the sentences imposed by the district court. In *United States v. Booker*, 543 U.S. 220, 244 (2005), the Supreme Court held that the Sixth Amendment right to a jury trial is violated when the district court, acting pursuant to a mandatory guidelines system, imposes a sentence greater than the maximum authorized by the facts found by the jury alone. To remedy this problem, the Court severed and excised the provisions of the Sentencing Reform Act, *see* Sentencing Reform Act of 1984, Pub. L. No. 98-473, ch. II, 98 Stat. 1987-2040 (1984) (codified as amended at 18 U.S.C.A.

§§ 3551-3742 (West 2000 & Supp. 2006) and at 28 U.S.C.A. §§ 991-998 (West 2006)), that mandated sentencing and appellate review in conformance with the guidelines. *See Booker*, 543 U.S. at 259. This excision rendered the guidelines "effectively advisory," *id.* at 245, and replaced the previous standard of review with review for reasonableness, *see id.* at 261.

We have previously described the necessary procedure for imposing sentence under the now-advisory sentencing guidelines:

> First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. Next, the court must determine whether a sentence within that range serves the factors set forth in [18 U.S.C.A.] § 3553(a) [(West 2000 & Supp. 2006)] and, if not, select a sentence within statutory limits that does serve those factors. In doing so, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law. . . . If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence"). The district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range. The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary. The district court need not discuss each factor set forth in § 3553(a) in checklist fashion; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.

*United States v. Moreland*, 437 F.3d 424, 432 (4th Cir.) (citations, internal quotation marks, & alterations omitted), *cert. denied*, 126 S. Ct. 2054 (2006). We review a sentence for reasonableness, considering "the extent to which the sentence . . . comports with the various, and sometimes competing, goals of § 3553(a)." *Id.* at 433.

We begin our analysis by recounting the manner in which the district court calculated Appellants' advisory guideline ranges. Bau-

com's presentence report (PSR) estimated his unpaid taxes at $347,134.40; this amount included approximately $36,000 in unpaid state taxes. *See United States Sentencing Guidelines Manual* § 2T4.1(G) (2003) (providing a base offense level of 18 for tax loss of more than $200,000 but less than $400,000). The PSR recommended a downward adjustment of two levels for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a). The resulting final offense level of 16, combined with Baucom's Criminal History Category of I, resulted in an advisory guideline range of 21-27 months. Davis' guideline range was calculated in the same manner, except that Davis' PSR estimated his unpaid taxes to be approximately $20,000 more than Baucom's.

At Baucom's sentencing hearing in November 2004, the district court refused to include the state taxes in relevant conduct:

> I don't think I have the . . . jurisdiction to sentence this man for [a] violation of North Carolina law. I mean, it's inconceivable to me that a federal judge would be sitting up here and saying you violated North Carolina law and I'm putting you in jail for it. It's just — what happened to the whole notion of federalism? I don't think I have the power to do that. And if I do, if I have discretion, I decline to exercise the discretion to do that. It's not fair and I ain't gonna. Y'all can all go to Richmond and they can tell some other judge what to do.

J.A. 702-03. The district court also overruled the Government's objection to the acceptance of responsibility reduction. The court found that Appellants had gone to trial solely for the purpose of challenging the constitutionality of the federal tax system and therefore the acceptance of responsibility reduction was available to them even though they had gone to trial. *See* U.S.S.G. § 3E1.1, comment. (n.2) (noting that a defendant who goes to trial may still receive an acceptance of responsibility deduction when, for example, he "goes to trial to assert and preserve issues that do not relate to factual guilt," such as a constitutional challenge to the statutory scheme).

The district court announced a sentence for Baucom of 21 months imprisonment but delayed entering a judgment until Davis' sentence

had been imposed. In the interim, the Supreme Court decided *Booker*, and the district court reconvened the sentencing hearing in February 2006. The court considered the factors set forth in 18 U.S.C.A. § 3553(a), and imposed a sentence of 15 months imprisonment. The court found that after being a "scofflaw" for 12 years, J.A. 778, Baucom had not made adequate efforts to rectify the situation. However, the court ruled that there was no need to deter Baucom from further criminal conduct or to protect the public.

At Davis' sentencing, conducted the same day, the court imposed a sentence of four years probation, conditioned on the service of 12 months of house arrest. In articulating the reasons for this sentence, the court first noted Davis' "extraordinary charitable works," *id.* at 761, which consisted of his involvement with a group that each summer brought children living in the area of the Chernobyl nuclear disaster to the United States for medical treatment. The court also noted Davis' efforts to become current on his tax liability and the fact that if Davis were incarcerated, the employees of his business would suffer. As it did in Baucom's case, the court found little need for the sentence imposed to deter future criminal conduct or to protect the public.

A.

The Government first maintains that the district court erred by excluding state tax amounts from Appellants' relevant conduct. This is a question involving the legal interpretation of the guidelines, and as such it is subject to de novo review. *See United States v. Schaal*, 340 F.3d 196, 198 (4th Cir. 2003).

The question here is whether state tax loss is relevant conduct to a federal tax offense; if so, the district court erred in not including the state tax amounts in its guideline calculations. *See United States v. Hayes*, 322 F.3d 792, 802 (4th Cir. 2003) (holding that "a court has no discretion to disregard relevant conduct in order to achieve the sentence it considers appropriate"). Relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Under the plain language of the guideline, state tax losses caused by Appellants are relevant conduct to the extent that

they "were part of the same course of conduct or common scheme or plan" as Appellants' failure to file federal tax returns. *See United States v. Powell*, 124 F.3d 655, 665-66 (5th Cir. 1997).

The record indicates that Appellants failed to file state tax returns as part of the course of conduct for which they were convicted. Therefore, it was error for the district court to refuse to include the state tax amounts when calculating the advisory guideline range. Although Appellants contend that inclusion of the state tax loss would not alter their base offense levels, it is not clear that this is correct. The Government notes that the district court did not include in its calculations tax losses from the years 1998 through 2002, nor did it consider updated figures offered by the Government at Davis' sentencing hearing. We leave to the district court the task of calculating the correct amount of tax loss upon resentencing.

### B.

The Government also contends that the district court erred in granting Appellants a two-level reduction for acceptance of responsibility. We review this ruling for clear error. *See United States v. Kise*, 369 F.3d 766, 771 (4th Cir. 2004). "A finding is clearly erroneous when, although there is evidence to support it, on the entire evidence the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Faulconer v. Comm'r*, 748 F.2d 890, 895 (4th Cir. 1984).

Ordinarily, a reduction for acceptance of responsibility is not available to "a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, comment. (n.2). However, when the defendant does not contest factual guilt but goes to trial only for the sake of raising and preserving a constitutional challenge to the statutory scheme he is charged with violating, an acceptance of responsibility reduction may still be available. *See id.* "In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Id.*

Seizing on the above-quoted sentence, the Government maintains that Appellants' pretrial conduct was uniformly obstructive and was

"exactly the opposite of the expression of remorse that the acceptance of responsibility guideline contemplates." Br. for the United States at 36 (internal quotation marks omitted). We agree. Furthermore, we conclude that the district court clearly erred in finding that Appellants proceeded to trial solely for the purpose of preserving their constitutional challenge to the validity of the tax code. A cursory review of the trial transcript demonstrates that Appellants in fact challenged their factual guilt by contesting the element of willfulness. Therefore, the district court improperly granted Appellants reductions for acceptance of responsibility.

## C.

Finally, the Government contends that the sentences ultimately imposed by the district court were unreasonable, even if premised on proper guidelines calculations. Although we have already determined that the district court improperly calculated the advisory guideline ranges for Appellants, we will provide some brief comments regarding the reasonableness of Appellants' sentences as an aid to the district court on remand.

First, we note that in both of Appellants' cases, the district court discounted the value of deterrence in so-called "tax protestor" cases. The Government argues that this ruling is inconsistent with the policies set forth in the guidelines, and we are inclined to agree. In commentary preceding the tax guidelines, the Sentencing Commission states:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. *Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines.* Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. Ch. 2, Pt. T, intro. comment. (emphasis added). Even if the district court is correct that deterrence is of less value in tax protestor

cases than in run-of-the-mill tax evasion cases, we remain of the opinion that the district court acted unreasonably in entirely discarding deterrence as a consideration in imposing sentence.

We also think that the sentences imposed by the district court fail to reflect the seriousness of the offense and do not provide just punishment, as required by 18 U.S.C.A. § 3553(a)(2)(A). Appellants failed to file taxes of any sort for *twelve years* before they were apprehended. Moreover, as the Government notes, neither Appellant began paying taxes until 2004, after his conviction. Finally, we note with respect to Davis' sentence that we are troubled by the heavy reliance of the district court on Davis' charitable works. *Cf.* U.S.S.G. § 5H1.11, p.s. (providing that a defendant's charitable works are ordinarily not a basis for departing from the guidelines).

## IV.

For the reasons set forth above, we affirm Appellants' convictions. We vacate their sentences and remand for resentencing consistent with this opinion.

*AFFIRMED IN PART;*
*VACATED AND REMANDED IN PART*