**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 08-4493**

———————

UNITED STATES OF AMERICA,

              Plaintiff - Appellant,

        v.

MARTIN LOUIS BAUCOM,

              Defendant - Appellee.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Graham C. Mullen, Senior District Judge.  (3:02-cr-00147-GCM-1)

———————

**No. 08-4512**

———————

UNITED STATES OF AMERICA,

              Plaintiff - Appellant,

        v.

PATRICK GRANT DAVIS,

              Defendant - Appellee.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Graham C. Mullen, Senior District Judge.  (5:02-cr-00026-GCM-CH-1)

———————

Argued:  September 23, 2009          Decided:  January 13, 2010

———————

Before TRAXLER, Chief Judge, WILKINSON, Circuit Judge, and Margaret B. SEYMOUR, United States District Judge for the District of South Carolina, sitting by designation.

———————

Vacated and remanded by unpublished per curiam opinion.

———————

**ARGUED:** David Alan Brown, Sr., OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellant.  Noell Peter Tin, TIN, FULTON, WALKER & OWEN, PLLC, Charlotte, North Carolina; Ross Hall Richardson, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellees. **ON BRIEF:** Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellant.  Claire J. Rauscher, Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellee Martin Louis Baucom.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The government appeals the sentences imposed on Martin Baucom and Patrick Davis after remand by the Supreme Court. We vacate the sentences and remand for new sentencing proceedings before a different district court judge.[1]

I.

Appellants operated Baucom-Davis and Associates, a land surveying and computer consulting business. From 1990 until 2002, Baucom and Davis failed to file personal income tax returns and failed to file income and employment tax returns for the business.

In May 2002, Baucom and Davis were separately charged with three counts of failure to file income tax returns. Through a superseding indictment, the government consolidated the cases and added a fourth count, charging both with conspiracy to defraud the United States. In August 2003, the case finally proceeded to trial, and Baucom and Davis were convicted on all counts.

---

[1] During the sentencing proceedings that took place after remand, the district court declared its intention to recuse itself from any further proceedings involving these defendants. See J.A. 187. We hereby direct that the case on remand be assigned to a different district court judge.

According to the information set out in the presentence reports ("PSRs"), Baucom owed $347,134.40 in unpaid taxes, while Davis owed $365,618.31. These amounts included unpaid federal and state income taxes from 1993 to 1997. Although the PSRs noted that the defendants had not paid taxes for the years 1998 through 2002, the amounts for those years could not then be determined and thus were not included in the loss amount calculated by the PSR. The PSRs recommended two-level acceptance-of-responsibility adjustments for each defendant, bringing the total offense level to 16 and yielding a 21-27 month Guidelines sentencing range for Baucom and for Davis.

A sentencing hearing was held for Baucom in November 2004. The district court refused to include unpaid state taxes as relevant conduct, believing it was unfair to consider state-law violations when sentencing for a federal crime. The court announced a sentence of 21 months, but delayed entering judgment until after Davis was sentenced. After the Supreme Court announced its decision in United States v. Booker, 543 U.S. 220 (2005), the district court set aside Baucom's sentence and indicated that it would hold a new sentencing hearing.

The district court finally convened sentencing hearings for Baucom and Davis in February 2006. The district court again refused to consider state tax losses as relevant conduct, and the court declined to permit the government to present evidence

4

of the tax losses for the years 1998-2002, evidence that had become available since the PSRs were prepared in 2004. Over the government's objections, the district court granted two-level acceptance-of-responsibility adjustments for each defendant. The district court's calculations yielded offense levels of 16 and advisory sentencing ranges of 21-27 months for each defendant.

As to Baucom, the court described him as a "scofflaw" who had ignored the tax laws for 12 years, J.A. 146, and failed to take any steps to correct his tax problems. The court nonetheless varied downward from the advisory Guidelines range and sentenced Baucom to 15 months' imprisonment. As to Davis, the court likewise concluded that a downward variance was appropriate. The district court noted Davis's "extraordinary charitable works," J.A. 129, his efforts to become current on his tax liability, and the hardship that the employees of Davis's business would suffer if he were sent to prison. The district court therefore sentenced Davis to four years' probation, conditioned on the service of 12 months' house arrest.

The government appealed the sentences to this court. We vacated and remanded for resentencing, concluding, among other things, that the district court erred by granting acceptance-of-responsibility adjustments and by refusing to consider unpaid

5

state taxes as relevant conduct. See United States v. Baucom, 486 F.3d 822, 829-30 (4th Cir. 2007) ("Baucom I").

Davis filed a petition for a writ of certiorari. After the Supreme Court issued its opinion in Gall v. United States, 552 U.S. 38 (2007), the Court granted the petition, vacated our decision, and remanded to this court for reconsideration in light of Gall. See Davis v. United States, 128 S. Ct. 870 (2008) (mem). We issued an order remanding the case to the district court for resentencing in accordance with principles set forth out in Gall.

Prior to the second sentencing hearing for the defendants, the probation agent filed supplements to the initial PSRs. The supplemental PSRs eliminated the acceptance-of-responsibility reductions that we had previously found improper and included the federal and state tax losses for 1998-2002, information that had been unavailable when the PSRs were first prepared. The inclusion of the information from those years raised the tax loss to more than $580,000 for Baucom and for Davis, which raised the offense level for each defendant from 18 to 20 and yielded 33-41 month advisory sentencing ranges.

At the re-sentencing hearing for Baucom, the district court initially indicated that it agreed with the calculations of the PSR supplement. The district court, however, reversed course, refusing to permit the government to present evidence of the

6

additional tax losses that had not been included in the original PSRs and refusing to increase the offense level based on those losses. The court therefore determined Baucom's total offense level to be 18.

Counsel for Baucom sought a downward variance, arguing that the five years between Baucom's conviction and sentencing had taken a toll on his family. Counsel noted that while Baucom had not yet paid any of his federal taxes, he had filed tax returns for the years 2003 through 2005 and was prepared to file his 2006 return. In response, the government noted that Baucom had not filed federal tax returns for 12 years, had only managed to file three federal tax returns since his conviction, but still had failed to file a single state tax return. The government pointed out that Baucom had not paid any of his federal or state tax liabilities, and had even declared himself to be a subcontractor rather than an employee so as to avoid any tax withholding. The government argued that an upward variance was appropriate and sought a prison term of 84 months.

The district court appeared to agree with the government, stating that, "[r]egrettably, Mr. Baucom presents a continued scofflaw. I think the government's argument is largely correct." J.A. 164. The court noted that "[h]e has not paid any of his state taxes. . . . He continues to reject the seriousness of the offense. He continues not to abide by the

7

law. . . . [C]ertainly if he's not going to pay his taxes, all we can do basically is punish him for that." J.A. 165. Despite the tenor of the court's comments, the district court still concluded that a downward variance was appropriate, and the court sentenced Baucom to the 15-month term of imprisonment originally imposed.

Davis was resentenced later that day. Counsel for Davis had not yet seen the supplemental PSR, and the district court offered to re-schedule the hearing. As counsel for Davis reviewed the supplemental PSR, the government noted that the issues were the same as in Baucom's resentencing and that it suspected the district court would resolve the issues in the same manner. The district court then explained the differences in the supplemental PSR: "You know you lose the two points for acceptance of responsibility and that the Presentence Report calls for an 18 [total offense level] and one [criminal history category]." J.A. 171. Counsel for Davis then stated, "I guess it's two levels up from what it was previously," to which the court responded, "That's correct. The Court of Appeals tells me . . . I should not have accepted the recommendation in the Presentence Report, and that therefore it was 18 and one." J.A. 171.

Counsel for Davis agreed to proceed with the sentencing and urged the district court to again impose a probationary

8

sentence. Counsel explained that Davis had filed all his tax returns since the conviction and was actively working with the IRS to negotiate and pay his tax liabilities. Counsel noted that Davis was still running his company and was involved in the same charitable activities as he had been at the time of the original sentencing. For its part, the government argued that a term of incarceration was required. The government noted that while Davis was current with his tax filings, Davis had not yet repaid any of the back taxes. The government contended that Davis had structured his personal finances and business operation so as to put most of his assets beyond the reach of the government, thus making himself effectively judgment-proof, and that Davis facilitated Baucom's ongoing tax avoidance by agreeing to treat Baucom as an independent contractor rather than an employee.

The district court concluded that a probationary sentence was warranted for Davis. The court explained that

> the situation with Mr. Davis is completely different from Mr. Baucom. Mr. Davis has stepped up. He has filed his taxes. . . .
>
> He has no criminal record. The circuit took umbrage with me talking about his charitable work, but I think I can consider that. I don't give it particularly great weight in this. I think the support he provides his family, his gainful employment, I think the effect on large numbers of employees who would be out of work tells me that I did the right thing the first time for the right reasons. . . .

J.A. 185. The district court therefore sentenced Davis to the same sentence previously imposed -- four years' probation, conditioned on the service of 12 months' house arrest.

The government appeals and again challenges the sentences imposed on Baucom and Davis.

II.

Although the Sentencing Guidelines are now advisory, see United States v. Booker, 543 U.S. 220, 245 (2005), "district courts in the post-Booker landscape must follow specific steps to arrive at an appropriate sentence." United States v. Abu Ali, 528 F.3d 210, 260 (2008). The court must first calculate the appropriate advisory Guidelines range, making factual findings as necessary. After giving the parties the opportunity to argue for the sentence they believe to be warranted, the court must consider the advisory sentencing range in conjunction with the factors set out in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2009) and impose the sentence it concludes is appropriate under all the circumstances. See Gall, 552 U.S. at 49-50; Abu Ali, 528 F.3d at 260. When imposing sentence, the district court "must make an individualized assessment based on the facts presented," Gall, 552 U.S. at 50, and the court "must adequately explain the chosen sentence to allow for meaningful appellate review," id.

10

Our review of the district court's sentencing decision is limited to determining, under a deferential abuse-of-discretion standard, whether the sentence imposed is reasonable.  See id. at 40-41.  This reasonableness review requires us to determine whether the court committed any procedural errors, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range."  Id. at 51.  If there are no procedural errors, we then consider the substantive reasonableness of the sentence. "Substantive reasonableness review entails taking into account the totality of the circumstances, including the extent of any variance from the Guidelines range."  United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007) (internal quotation marks omitted).

On appeal, the government contends that the sentences imposed by the district court are procedurally and substantively unreasonable.  The government claims that the district court miscalculated the Guidelines range by refusing to consider the additional tax losses, that the district court failed to properly consider the § 3553(a) factors, and that the district

11

court failed to adequately explain its reasons for the sentences imposed.

## A.

We begin with the government's claim that the district court improperly calculated the advisory sentencing range under the guidelines. The government contends that the state and federal tax losses for the years 1998-2002 were part of the relevant conduct and therefore should have been considered by the district court when determining the defendants' offense level. We agree.

The base offense level for tax evasion charges is determined by the tax loss, see U.S.S.G. § 2T1.1(a) (1998), and the tax loss includes the losses flowing from the offense of conviction and all relevant conduct, see U.S.S.G. § 1B1.3(a). The superseding indictment charged Baucom and Davis with conspiring to violate the tax laws beginning in 1993 and continuing through the date of the indictment – December 2002. The tax losses, both state and federal, for the years 1998 – 2002 are thus part of the relevant conduct for the offense of conviction. See U.S.S.G. § 2T1.1, cmt., n.2 ("In determining the total tax loss attributable to the offense . . ., all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated.

12

The following examples are illustrative of conduct that is part of the same course of conduct or common scheme or plan: (a) there is a continuing pattern of violations of the tax laws by the defendant. . . .").   The defendants do not challenge the substance of this conclusion -- that is, they do not argue that the 1998-2002 tax losses do not fall within the Guidelines' definition of relevant conduct.   Instead, Baucom and Davis advance separate arguments as to the government's claim that the district court erred in calculating the offense levels.

Baucom contends that the loss amounts for 1998-2002 cannot be included now because the government did not present evidence establishing those losses at the sentencing proceedings in 2006. See United State v. Parker, 30 F.3d 542, 553-54 (4th Cir. 1993) ("[T]he prosecution has already been given one full and fair opportunity to offer whatever proof about Tonsler Park it could assemble. Having failed to seize that opportunity, the Government at resentencing should not be allowed to introduce additional evidence to prove that Tonsler Park contained a playground [and thus that a sentencing enhancement would apply]. One bite at the apple is enough.").

In this case, however, the government has not had "one full and fair opportunity" to offer evidence of the 1998-2002 losses. The original PSRs, prepared in 2004, did not include the tax-loss figures for the years 1998-2002, because that information

13

could not be determined at that time. The PSRs, however, did note that losses of an as-yet undetermined amount had occurred for those years. Information about those losses had become available by the time of the sentencing in 2006, but the district court refused to permit the government to present that evidence. See J.A. 117-19. While the primary focus of our opinion in Baucom I was the district court's error in excluding the state tax amounts, our opinion also made clear that the district court erred by not permitting the government to present the evidence of the 1998-2002 tax losses. As we explained in Baucom I, inclusion of the state tax amounts alone would not have affected the defendants' offense levels, but we nonetheless rejected the defendants' claim that the state-tax error was harmless. We reasoned that because "the district court did not include in its calculations tax losses from the years 1998 through 2002, nor did it consider updated figures offered by the Government at Davis' sentencing hearing," Baucom I, 486 F.3d at 829, the total loss amount at that point was uncertain, and we therefore could not conclude that the state-tax error was harmless.

Our opinion in Baucom I thus required the district court on remand to allow the government to present evidence of the 1998-2002 tax losses and to consider those losses when calculating the defendants' offense levels. The Supreme Court's decision to

14

vacate Baucom I for reconsideration in light of Gall gives us no reason to question that conclusion now. The 1998-2002 tax losses are clearly part of the defendants' pre-indictment pattern of tax evasion and thus are properly considered relevant conduct, and the original PSRs discussed the defendants' failure to file returns from 1998 through 2002. That information about the amount of those tax losses was not available for inclusion in the PSRs should not have precluded the government in the original sentencing hearing from presenting the (then) newly available information, as we concluded in Baucom I.[2] Because the government has never had an opportunity to present this evidence, Parker's one-bite-at-the-sentencing-apple rule simply has no applicability here.

For his part, Davis contends that the district court in fact set his offense level at 20, the level sought by the government on appeal, and that, accordingly, there was no error in the district court's Guidelines calculation. We disagree.

The 2006 PSR set Davis's offense level at 20, and two of those points were attributable to the 1998-2002 tax losses. When the district court summarized the changes in the PSR for

---

[2] If the defendants at the original hearing had not been prepared to address the 1998-2002 tax loss information, the district court could have granted a brief continuance to give counsel an opportunity to prepare.

Davis's attorney, the court told counsel that the difference was the elimination of the acceptance-of-responsibility reduction, and the court twice told counsel that the offense level was 18. See J.A. 171. Since the district court had just sentenced Baucom and had in that proceeding refused to include the two-point increase for the 1998-2002 tax losses, it is apparent that the district court likewise took those two points off Davis's offense level, thus giving him an offense level of 18, as the district court stated to counsel.

As support for his claim, however, Davis points to an exchange between the district court and the government at the end of the hearing, when the government was putting its objections to the sentencing on the record. As noted above, the PSR set the offense level at 20, but the government at sentencing sought a sophisticated-means enhancement that would have brought the offense level to 22. At the end of the hearing, the government noted its objection "to the Court's ruling that [the offense level and criminal history score] should not be 22 and one." J.A. 187. The district court interjected, "20 and one. 20 and one." J.A. 187. The government then explained that its "position is it should have been 22 and one, Your Honor," to which the district court responded, "Based on what you[] argued, yeah. Okay." J.A. 187. We disagree with Davis's claim that the district court's mention

16

of "20 and one" means that the court actually used an offense level of 20 for Davis. We think it clear from the context of this conversation that the district court was briefly confused about the offense level the government had sought and thought the government had only sought an offense level of 20. The court's statement in no way indicates that the court actually used an offense level of 20 when sentencing Davis.

Because the 1998-2002 state and federal tax losses were clearly relevant conduct, the district court erred by excluding those amounts from the tax loss calculation. See United States v. Hayes, 322 F.3d 792, 802 (4th Cir. 2003) ("[A] court has no discretion to disregard relevant conduct in order to achieve the sentence it considers appropriate."). This error in the Guidelines' calculation renders the sentences procedurally unreasonable and requires us to remand for resentencing. See United States v. Diaz-Ibarra, 522 F.3d 343, 347 (4th Cir. 2008) ("An error in the calculation of the applicable Guidelines range, whether an error of fact or of law, infects all that follows at the sentencing proceeding, including the ultimate sentence chosen by the district court, and makes a sentence procedurally unreasonable even under our deferential abuse-of-discretion standard." (internal quotation marks omitted)).

Although the Guidelines-calculation error in and of itself requires re-sentencing, we briefly address other issues raised by the government that might arise again on remand.

We agree with the government that the district court failed to adequately consider the need for deterrence and failed to consider the policy statements expressing the Sentencing Commission's views that tax evasion is a serious offense, its concerns about the pre-Guidelines frequency of probationary sentences for tax evaders, and its belief that deterrence of others should be a primary consideration when sentencing tax evaders. See U.S.S.G. Ch. 2, Pt. T, introductory cmt.; id. at Ch. 1, Pt. A, introductory cmt 4(d). As we explain in United States v. Engle, No. 08-4497, an opinion also filed today, the district court is not required to agree with the Commission's policy views, but it is required to consider those views.

We also agree with the government that the district court's explanation for the sentences was inadequate. A district court's sentencing decision must be premised on an "individualized assessment based on the facts presented," Gall, 552 U.S. at 50, and the court's explanation of its sentencing must be sufficient "to satisfy the appellate court that [the district court] has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking

18

authority," Rita v. United States, 551 U.S. 338, 356 (2007). The district court's explanation need not necessarily be "elaborate or lengthy," particularly when the sentence is within the advisory Guidelines range. United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009). In this case, however, the sentences significantly deviated from the advisory Guidelines range, thus warranting a more detailed explanation from the district court. See Gall, 552 U.S. at 50 (explaining that if the sentencing judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one."). And as to Baucom, the explanation offered by the district court, which characterized Baucom is a "continued scofflaw," would have supported an upward variance, but it in no way provides any support for a downward variance in any amount, much less the significant downward variance imposed by the district court in this case.

Finally, we also agree with the government that the district court improperly focused on the effect that a term of imprisonment for Davis would have on Davis's employees. Sentencing a defendant to prison will always have an effect,

often a very serious negative effect, on the lives of others -- families lose caretakers and providers, and employees sometimes lose their employers.  In the usual case, however, the effect of the sentence on others is an insufficient basis for rejecting a term of imprisonment.  Moreover, because defendants who have employees are more likely to be wealthy, the approach taken by the district court in this case would, as the government argues, have the effect of "reward[ing] the wealthy with probationary sentences while punishing the impoverished with incarceration." Brief of Appellant at 23.  While the socio-economic status of a defendant may sometimes be relevant to certain aspects of the sentencing process, it should not play the kind of role that it played in the district court's decision in this case to entirely disregard the sentence recommended by the Guidelines.  See Engle, No. 08-4497, section II(B).

### III.

Accordingly, for the foregoing reasons, we hereby vacate the sentences and remand for resentencing before a different district judge.  On remand, the district court shall permit the government to present evidence of the state and federal tax losses for the years 1998 through 2002, and the court shall

20

include those amounts when determining the defendants' offense levels.

<u>VACATED AND REMANDED</u>
